

# OFFICE OF THE DISTRICT ATTORNEY, Bronx County

**Darcel D. Clark**  
*District Attorney*

198 East 161st Street  
Bronx, NY 10451

Phone 718-838-7322  
Fax:   718-590-6523

Filed via Electronic Case Filing  
The Honorable Sarah L. Cave  
United States District Judge  
Southern District of New York  
Thurgood Marshall United States Courthouse  
500 Pearl Street, Room 702  
New York, NY 10007

December 2, 2019

Re: *James Garlick v.*  
*Chistopher Miller*  
18 Civ. 11038 (CIM-SLC)

Your Honor:

     Our office represents the respondent, Christopher Miller, in the above-entitled habeas corpus proceeding. Following oral argument on November 21, 2019, Your Honor ordered the People to submit the following supplemental materials to the Court by December 2, 2019: 1. Information describing the role of a Medicolegal Investigator in the New York City Office of the Chief Medical Examiner and 2. Information as to who completed the "Notice of Death" form dated November 1, 2011 (ECF No. 11-7 at 18),

     Fundamentally, a medicolegal investigator is tasked with investigating whether a reported death falls within OCME's jurisdictional purview. In this capacity, medicolegal investigators facilitate and support investigations intended to determine whether a particular death that has been referred to OCME occurred under circumstances for which performance of an autopsy is required by law. While one's specific duties can vary based on training and experience, the role of a medicolegal investigator is aimed at "obtain[ing] a factual history and record of events, emphasizing the manner and circumstance of death" (Attachment 1, p.1). The attached memorandum from the Office of the Chief Medical Examiner delineates the specific duties and responsibilities entrusted to its medicolegal investigators. There are three different assignment levels within this role that correspond to graduating levels of difficulty and skill. Generally, the investigators document evidence and direct its removal, while safeguarding quality and maintaining a chain of evidence. They also provide "information to family and authorized others as to cause of death, manner and circumstances as determined, thus providing counseling, understanding, and education" (Attachment 1, p. 2). The investigators identify potential need for follow up investigations and may perform related investigations and interviews, as necessary (Attachment 1, p. 3). Medicolegal investigators are also present at "hospitals, hospices and other medical care facilities for completion of autopsy reports" (Attachment 1, p. 4). They help determine whether OCME should perform an autopsy and oversee the

handling of site or bodies. Medico-investigators of all assignment levels may testify in court. These professionals are not licensed physicians, but may be physician's assistants (Attachment 1, pp. 5-7).

With respect to the Notice of Death form, on November 27, 2019, I spoke with Leslie Kamelhar, Esq., an attorney employed within OCME's office of legal counsel, to gather additional information. Ms. Kamelhar explained that a Notice of Death form is completed by OCME intake personnel at the time that a death is first reported to OCME. The information contained in the Notice of Death form is typically supplied to OCME by doctors, physician's assistants, nurse practioners or administrative staff affiliated with the medical facility where the decedent was pronounced dead; OCME does not investigate deaths reported by private citizens. In this case, Dr. Varughese, an emergency-room resident physician at Saint Barnabas Hospital at the time, was the individual who reported Gabriel Sherwood's death to OCME intake, leading to the creation of his Notice of Death form. According to Ms. Kamelhar, depending on the sufficiency of the information obtained in the course of preparing the Notice of Death Form, a medicolegal investigator may be assigned if it remains unclear whether a death comes within OCME's jurisdiction so as to require an autopsy. The notice of death form is also significant inasmuch as it begins the time period for family members to object to the performance of an autopsy. See N.Y. Pub. Health Law § 4214 (1).

In addition to the significant number of habeas cases that have found this area of the law to be unsettled and that, therefore, support the People's position that the Appellate Division's ruling was neither contrary to nor an unreasonable application of clearly defined federal lawYour the People are now providing two additional cases that are of particular note. Copies of the two cases are attached to this letter motion.

In Johnston v. Mahally, 348 F. Supp. 3d 417 (E.D. Pa. 2018), the Eastern District of Pennsylvania addressed one of petitioner's central contentions. There, the petitioner acknowledged that the testimonality of autopsy reports was unsettled, but "argue[d] that the state courts should have applied the general principles from the Supreme Court's precedents to his case." Id. at 433. Citing Williams v. Taylor, 529 U.S. 362, 412 (2000), the District Court rejected this reasoning and noted that the "unreasonably refuses to extend" argument was inappropriate in this context. Id. at 434-35. In Williams, the Supreme Court noted that "[t]he difference between applying a rule and extending it is not always clear" and that refusal to extend a rule would support habeas relief under AEDPA only when "it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question." Johnston, 348 F. Supp. 3d 434, quoting Williams, 529 U.S. at 427. The Johnston court concluded "The foregoing exposition shows why Petitioner's unreasonable-failure-to-extend argument fails for two reasons. First, as already stated above, there is no "clearly established Federal law" or "squarely established" rules concerning autopsy reports. Second, whatever the clearly established law is, the Circuit Courts disagree about how to apply it to autopsy reports." Id. at 435.

Further, in Flournoy v. Small, 681 F.3d 1000, 1004 (9th Cir. 2012), the Ninth Circuit agreed with the People's position as well. That analysis is similar to that in Vega v.

Walsh (cited by the People at oral argument). In Flournoy, the Ninth Circuit recognized that Bullcoming and Melendez-Diaz were decided after the state courts' decisions in the case and thus did not support habeas relief. Like the Vega court, the Flournoy court provided important dicta demonstrating that Bullcoming and Melendez-Diaz did not resolve the uncertainty as applied to autopsy reports. In particular, the Ninth Circuit focused on Justice Sotomayor's concurring opinion, in which she "specifically identified Confrontation Clause questions that in her view remained unanswered by the Court's holdings in that 2011 case." Flournoy, 681 F.3d at 1005. This included, among other things, whether a supervisor, reviewer, or person with limited connection to the case could provide surrogate testimony. With those questions left unanswered, the Ninth Circuit found that "it is impossible to conclude that the California court's conclusions in this case were contrary to clearly established federal law at the time." Id. at 1005.

In addition to the foregoing items, Your Honor's order sought the surveillance footage video played at petitioner's trial, a CD-ROM copy of which was sent to chambers on November 27, 2019. Thank you for your consideration in this matter. If you have any questions, please contact me by phone at (718) 838-6229 or via e-mail at weissjo@bronxda.nyc.gov.

Respectfully,

Joshua P. Weiss
Assistant District Attorney

Cc: Matthew Bova, Esq.
Center for Appellate Litigation
120 Wall Street
New York, NY 1005

> The filing at ECF No. 27 containing the requested information was inadvertently filed as a motion for a Rule 37.2 Conference.
>
> The Clerk of Court is respectfully directed to terminate the Letter-Motion at ECF No. 27.
>
> SO ORDERED            12/3/19
>
> SARAH L. CAVE
> United States Magistrate Judge