UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES GARLICK,

    Petitioner,

-against-

SUPERINTENDENT WILLIAM LEE, Eastern Correctional Facility

    Defendants.

No. 18-cv-11038 (CM) (SLC)

**DECISION AND ORDER**

McMahon, C.J.:

    I have received and reviewed the Report and Recommendation of The Hon. Sarah L. Cave, dated April 27, 2020 (Dkt. No. 29; hereinafter the "R&R"), denying Petitioner James Garlick's petition for a writ of habeas corpus. Garlick seeks relief on the grounds that the prosecution relied on an autopsy report prepared by an individual whom Garlick was not given the opportunity to cross examine at trial, in violation of the Confrontation Clause of the Sixth Amendment. He claims that the decision of the First Judicial Department of the Supreme Court of the State of New York affirming his conviction "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1),

    Judge Cave concluded that Garlick's petition did not meet the exacting standard for relief under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Nonetheless, the R&R acknowledges that Garlick's petition "made a substantial showing of the denial of a constitutional right," and recommends that this Court certify the following questions for appeal

1

(*see* 28 U.S.C. § 2253(c)(2)): (1) whether the Supreme Court's Confrontation Clause precedent clearly established, as of the date Garlick's conviction was affirmed by the First Department, that an autopsy report was testimonial; and (2) if so, whether the First Department's decision denying Galrick's Confrontation Clause claim was contrary to, or involved an unreasonable application of, that precedent (R&R at 63).

Timely objections to the R&R were received from Petitioner and Respondent Christopher L. Miller, Superintendent of the Great Meadows Correctional Facility, where Petitioner Garlick was housed at the time he filed his petition. (Dkt. Nos. 32, 33.)[1] The Court has considered thoroughly all of the Petitioner's and Respondent's arguments in support of their objections, and has considered *de novo* all of the points raised.  *See* 28 U.S.C. § 636(b)(1)(c).

Although I adopt substantially all of Judge Cave's analysis of the issues and conclusion of law in the R&R, I respectfully disagree with the recommendation that I deny Garlick's petition for failure to meet the standard set forth in § 2254(d)(1).  Garlick has, in fact, made the necessary showing to obtain habeas relief.  Accordingly, the petition for a writ of habeas corpus is GRANTED.

## BACKGROUND

### A.  Factual Background

A thorough treatment of the facts is set forth in the R&R. (R&R at 2-9.)

In sum: at Garlick's trial on charges of Second Degree Murder, First Degree Manslaughter, First Degree Assault, and Second Degree Assault, the prosecution entered into evidence a report prepared by Dr. Katherine Maloney of the New York Office of the Chief

---

[1] Garlick was recently transferred from Great Meadows to Eastern Correctional Facility; accordingly, the Court has substituted the superintendent of that facility, William Lee, as respondent in the case caption.  *See* Fed. R. Civ. P. 25(d).

Medical Examiner ("OCME"), summarizing an autopsy she had performed on Garlick's alleged victim. The autopsy occurred after Garlick and another individual had been identified as suspects, with two homicide detectives in attendance. In the autopsy report, Dr. Maloney stated that the cause of death was homicide resulting from multiple stab wounds, which caused the police to rule out the other suspect in the case and focus on Garlick.

Although Garlick admitted to having used force against the victim (in defense of his girlfriends), he disputed throughout the trial that he had possessed or used a knife during the altercation. The prosecution did not call Dr. Maloney at the trial, since she was no longer employed by OCME, instead calling Dr. Susan Ely, who had not attended the autopsy, to lay the foundation and testify about Dr. Maloney's report. Garlick's counsel objected that Dr. Ely's testimony violated Garlick's right to confrontation, but was overruled.

The jury convicted Garlick on the manslaughter charge, and the First Department affirmed the trial court's ruling on the Confrontation Clause issue. The appellate court ruled unanimously:

> "'Defendant's right of confrontation was not violated when an autopsy report prepared by a former medical examiner, who did not testify, was introduced through the testimony of another medical examiner' (*People v Acevedo*, 112 AD3d 454, 455 [1st Dept 2013], *lv denied* 23 NY3d 1017 [2014]), since the report, which '[did] not link the commission of the crime to a particular person,' was not testimonial (*People v John*, 27 NY3d 294, 315 [2016]). Defendant's contention that *People v Freycinet* (11 NY3d 38 [2008]) has been undermined by subsequent decisions of the United States Supreme Court is unavailing (*see Acevedo*, 112 AD3d at 455)."

*People v. Garlick*, 144 A.D.3d 605, 606, 42 N.Y.S.3d 28 (N.Y. App. Div. 2016).

Garlick's habeas petition was timely filed within one year after he exhausted his available remedies on direct review.

3

### B. Confrontation Clause Precedent

This Court adopts the R&R's thorough and well-reasoned discussion of several recent Supreme Court decisions dealing with out-of-court statements subject to the defendant's right to confrontation under the Sixth Amendment. The following is reproduced to focus the scope of this Court's review of the R&R.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This entitles a criminal defendant the right to cross examine all those "who bear testimony" against him, including those who make out-of-court statements "that declarants would reasonably expect to be used prosecutorially," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford v. Washington*, 541 U.S. 36, 51-52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (internal quotation marks omitted).

In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed. 2d 314 (2009), the Supreme Court ruled that forensic reports – certified by state laboratory analysts and identifying a controlled substance as cocaine – fell within the "core class of testimonial statements" covered by the Confrontation Clause, and that the defendant had a right to confront the analysts at trial. *Id.* at 311. In so holding, the court rejected the argument that the Sixth Amendment only guarantees a criminal defendant the right to confront "accusatory witnesses" – those that specifically accuse him or her of committing the crime. *Id.* at 313. Justice Scalia, writing for the majority, made clear that the constitution "contemplates two classes of witnesses – those against the defendant and those in his favor . . . there is not a third category of witnesses, helpful to the prosecution, but somehow immune from confrontation." *Id.* at 313-14.

Two years later, the Supreme Court extended the reasoning of *Melendez-Diaz* to another type of certified report: analyses of blood alcohol collected from persons suspected of driving under the influence. In *Bullcoming v. New Mexico*, 564 U.S. 647, 661, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011), the court held that "analysts who write reports introduced as evidence must be made available for confrontation," even where those analysts do nothing more than transcribe the results generated by a gas chromatograph machine. *Id.* at 661. In doing so, the Supreme Court rejected the respondent's argument that "observations of independent scientists" are not covered by the Confrontation Clause, reiterating the holding in *Melendez-Diaz* that certified analyses submitted "for the purpose of establishing or proving some fact in a criminal proceeding" are testimonial in nature. *Id.* at 664 (internal quotation marks omitted). Therefore, when the prosecution "elected to introduce [an analyst's] certification, [the analyst] became a witness Bullcoming had the right to confront. Our precedent cannot sensibly be read any other way." *Id.* at 663.

To be sure, the Supreme Court has not ruled that every certified, out-of-court scientific report is a testimonial statement that gives rise to a right to confrontation. For example, in *Williams v. Illinois*, 567 U.S. 50, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012), a plurality found that the prosecution's introduction of a DNA profile that had been certified and "produced before any suspect was identified," and "sought not for the purposes of obtaining evidence," did not require "calling the technicians who participated in preparation of the profile." *Id.* at 58. In other words, the DNA report in *Williams* was not created during the course of the criminal proceeding in which it was ultimately offered as evidence, it was not the type of statement made "against" the defendant that *Meledendez-Diaz* defined as testimonial in nature.

5

### C. The conclusions of the Report and Recommendation

After reviewing that precedent, Judge Cave determined that: (i) "the Autopsy Report qualifies as testimonial and should not have been admitted into evidence at trial without giving Garlick the opportunity to cross examine Dr. Maloney [the medical examiner who conducted the autopsy" (R&R at 46); (ii) surrogate testimony from an expert witness who was not present at the autopsy "was not a constitutionally sufficient substitute for cross examination of Dr. Maloney herself" (*id.* at 47); and (iii) the First Department's decision to affirm Garlick's conviction on the grounds that the autopsy report was not testimonial was not consistent with Supreme Court precedent (*id.* at 48-49); and (iv) admission of the autopsy report under such circumstances was not harmless error, (*id.* at 59-63.)

The R&R correctly stated that the certified autopsy report, prepared during the course of an investigation that had already identified Garlick as a suspect, was the sort of "declaration of facts written down and sworn to by the declarant" that the Supreme Court deemed testimonial in *Melendez-Diaz* and *Bullcoming*. (R&R at 34-46.) The R&R also recognized that the First Department's decision, as well as the authorities it cited, relied on the "accusatory witnesses" distinction rejected by the Supreme Court in 2009. (*Id.* at 51-55.)  Therefore, the R&R provided a roadmap to conclude that the First Department's 2016 affirmance of Garlick's conviction was either contrary to, or an unreasonable application of, Supreme Court precedent.  Judge Cave also concluded that the admission of the report did not constitute harmless error.

Nonetheless, Judge Cave ruled that "the Supreme Court's Confrontation Clause precedent is unsettled, and therefore insufficiently 'established' to grant relief to Garlick here." (R&R at 58.)  She had two reasons: for one thing, not all lower courts have agreed that autopsy reports are testimonial statements within the ambit of the Confrontation Clause have

6

agreed that they were; for another, some courts in this Circuit have commented that the Supreme Court's Confrontation Clause "does not conclusively establish under which guidelines the use of forensic reports at trial . . . may intrude on a defendant's right to confrontation." *Soler v. U.S.*, No. 10-cv-4342 (LAP), 2015 WL 4879170, at *16 (S.D.N.Y. Aug. 14, 2015); *Vega v. Walsh*, 669 F.3d 123, 127 (2d Cir. 2012) (finding "reasonable jurists could disagree" whether a medical examiner's testimony about an autopsy report he had not prepared violated the confrontation clause).

### D. The Parties' objections to the Report and Recommendation

#### i. Petitioner's Objections

Petitioner objects to: (1) the R&R's failure to analyze the First Department's error under the "contrary to" prong of the habeas statute, a process that entails *de novo* review; (2) the Report's failure to find that the autopsy report here was materially indistinguishable from forensic reports found testimonial by the Supreme Court; and (3) the Report's conclusion that no "clearly established" Supreme Court precedent rendered an autopsy report—created during a homicide investigation and declaring that the cause of death was "homicide"—testimonial. (Dkt. No. 33 at 2.)

#### ii. Respondent's Objections

The Respondent objects to two findings in the R&R on two grounds. First, Respondent asserts that Judge Cave should not have found "that the introduction of the autopsy report into evidence through a witness other than the medical examiner who performed the autopsy runs afoul of controlling federal jurisprudence." (Dkt. No. 32 at ¶ 8.) The rationale for this argument is similar to Judge Cave's contention that the law in this area was not "clearly established" as of the time of the First Department's decision, discussed in greater detail below.

7

Second, Respondent challenges certain of Judge Cave's characterization of the trial record. (*Id.* ¶ 10.) I have reviewed the material Judge Cave cited in the R&R, and find both her conclusions and characterizations faithful and accurate. Respondent's objections in this regard are overruled.

## STANDARDS OF REVIEW

### I.     Reviewing a Magistrate's Report and Recommendation

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C.A. § 636(b)(1)(C). The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings. *See* 28 U.S.C. § 636(b)(1)(C). To the extent, however, that a party makes only conclusory or general objections, or simply reiterates original arguments, the Court will review the Report strictly for clear error. *Pearson-Fraser v. Bell Atl.*, 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003).

### II.     The Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d)(1)

AEDPA constrains a federal court's ability to grant a state prisoner's application for a writ of habeas corpus for claims adjudicated on the merits in state court. AEDPA limits issuance of the writ to circumstances in which the state proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor,* 529 U.S. 362, 412 (2000).

A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*,

529 U.S. at 413. A state court's merely incorrect application of the correct legal rule to the particular facts of the case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Id.* at 406.

Under the "unreasonable application" prong of Section 2254(d)(1), federal court may only overrule state court decisions found to be "objectively unreasonable." *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 634 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). The more general the rule announced by the Supreme Court, the more leeway state courts enjoy in applying it. *Id.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance,* 556 U.S. 111, 122, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

When judging whether a state court ruling was contrary to or an unreasonable application of Supreme Court precedent, a federal court measures state court decisions "against [the Supreme] Court's precedents as of the time the state court renders its decision." *Cullen v. Pinholster*, 563 U.S. 170, 182, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011).

## DISCUSSION

Garlick's habeas petition meets the standard set forth in § 2254(d)(1). The First Department unreasonably applied clearly established law when it affirmed Garlick's conviction. The Court having adopted the portions of the R&R to which Respondent objects, Petitioner's objections are disposed of as follows.

### I. The First Department's decision was not "contrary to" Supreme Court Precedent.

In discussing the impact of the scope of habeas review on Garlick's petition, the R&R focuses entirely on the unreasonable application prong. Petitioner's first two objections claim that Judge Cave committed error by passing over the "contrary to" prong. Had she not done so, the magistrate would have enjoyed free reign to "determine the principles necessary to grant relief," as opposed to deferring to the rule announced by the state court, and determining whether that rule was applied correctly. *Lafler v. Cooper*, 566 U.S. 156, 173, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012) (citing *Panetti v. Quarterman*, 551 U.S. 930, 948, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007)).

The "contrary to" prong is inapplicable in this case. A state court decision is only contrary to Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in our cases," or "confront a set of fact that are materially indistinguishable from a decision of [the Supreme] Court and arrives at a different result from out precedent." *Williams*, 529 U.S. at 405-6. Neither is the case here. The First Department located the correct rule: out-of-court statements are only subject to confrontation to the extent that they are testimonial. And, although not subject to a different legal rule than those addressed in *Crawford*, *Melendez-Diaz*, and *Bullcoming* (as will be discussed in greater detail below), the out-of-court statements at issue here were collected in manner factually distinguishable from the circumstances presented to the Supreme Court in those cases.

Because it identified the correct rule and applied it to facts distinguishable from the Court's prior decisions, the First Department's decision was not "contrary to" Supreme Court

Precedent, and Judge Cave correctly focused on whether the state court had unreasonably applied the relevant law. Therefore, Petitioner's first two objections to the R&R are overruled.

## II. The First Department's decision was an unreasonable application of clearly established law.

The R&R concluded that the Supreme Court's Confrontation Clause precedent was not "clearly established" at the time of the First Department's decision, and thus the decision could not merit habeas relief under either prong. (R&R 55-59.) Garlick objects to that finding. This Court agrees, and concludes that the First Department unreasonably applied clearly established law when affirming Garlick's conviction. For the following reasons, Petitioner's third objection to the R&R is sustained.

As an initial matter, Garlick was not required to find a Supreme Court opinion holding autopsy reports testimonial in order to prevail on his claim that "clearly established law" mandated a different result in his case. The federal habeas statute does not demand "an identical factual pattern before a legal rule must be applied." *White v. Woodall*, 572 U.S. 415, 427, 134 S.Ct. 1697, 188 L.Ed.2d 698 (2014). So the question raised by Garlick's petition is not whether autopsy reports are testimonial, but whether the First Department unreasonably applied the Supreme Court's precedents to conclude that a certified report (of any kind), prepared in the course of a criminal investigation and tending to prove the victim's cause and manner of death, was testimonial in nature.

There are, no doubt, many types of forensic reports containing the types of statements deemed testimonial in *Crawford*, *Melendez-Diaz*, and *Bullcoming*. But the fact that different types of documentation exist does not mean that each type must be deemed subject to the Supreme Court's recent Confrontation Clause precedents before those precedent can be applied to them. The relevant question in all such cases is whether the out-of-court statements are

11

testimonial in nature, not what label appears on the document that the prosecution seeks to introduce to bring those statements into evidence. The Supreme Court's Confrontation Clause precedents clearly instruct courts to examine the nature of potentially testimonial statements -- rather than the classification of the document in which they appear -- to determine whether the statement triggers the defendant's right to confront the speaker.

Nor do disagreements between lower state and federal courts on the testimonial nature of particular autopsy reports preclude a finding of "clearly established law" in the area of out-of-court certifications. The habeas statute is clear: it is the word of the Supreme Court, and only the Supreme Court, that matters when determining what is "clearly established law." 28 U.S.C. § 2254(d)(1). As the court made clear in *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 185 L.Ed.2d 540 (2013), lower courts are not free to "canvass circuit decisions to determine whether a particular rule of law . . . would, if presented to the Court, be accepted as correct." 569 U.S. at 64. Respondent may not substitute conflicts between lower courts in cases that happen to apply *Crawford* and its progeny to autopsy reports for "clearly established law" announced by the Supreme Court regarding certified out-of-court statements made in the course of a criminal investigation.

Limiting "clearly established law" to the statutory definition quickly reveals that the First Department unreasonably applied the Supreme Court's precedents when denying Garlick's appeal. The court ruled that the autopsy report was not testimonial since it did "not link the commission of the crime to a particular person," *Garlick*, 44 A.D.3d at 606, even though *Melendez-Diaz* definitively did away with the accusatory/non-accusatory distinction some seven years earlier. *Melendez-Diaz*, 557 U.S. at 313-14. What is more, the First Department ignored the holding in *Bullcoming* that the only sensible way to read the Supreme Court's prior

Confrontation Clause decisions demands that a certified statement prepared during a criminal investigation which tends to prove some fact in the case is testimonial in nature. *Id.* at 663.

*Bullcoming* not only demonstrates the merit of Garlick's petition; it also fits quite neatly with *Harrington*'s formulation of the "unreasonable application" standard, which denies relief to any petition that challenges a state court ruling subject to "fairminded disagreement." *Harrington*, 562 U.S. at 103. But fairminded jurists could not possibly disagree about the testimonial nature of certified reports prepared to aid a criminal investigation, given that the Supreme Court previously held that those reports are testimonial and that its precedents "cannot sensibly be read any other way." *Bullcoming*, 564 U.S. at 663.

As for *Vega* and *Soler* – two cases from this Circuit that Judge Cave cited for the proposition that the Supreme Court "has not developed a clear set of rules" governing the testimonial nature of autopsy reports (R&R at 58) – they provide no insight into the state of "clearly established law" at the time that the First Department affirmed Garlick's conviction. That is because a federal court reviewing a state court decision must " 'focus on what a state court knew and did,' and . . . measure state-court decisions 'against this Court's precedents *as of the time the state court renders its decision*." *Green v. Fisher*, 565 U.S. 34, 38, 132 S.Ct. 38, 181 L.Ed.2d 336 (2011) (emphasis in original) (quoting *Cullen*, 563 U.S. at 182). That date, the R&R correctly stated, was November 29, 2016, several years after the Supreme Court decided the cases relevant to this petition. (R&R at 13.)

Neither Vega nor Soler could avail themselves of the Confrontation Clause principles announced in *Melendez-Diaz* and *Bullcoming* that the First Department disregarded when affirming Garlick's conviction. *Vega* challenged a conviction affirmed in 2005. *Vega*, 669 F.3d at 125. *Soler* challenged a federal conviction, as opposed to a state court decision, under 28

13

U.S.C. § 2255(d)(1), arguing that he received ineffective assistance of counsel at his 2007 trial when his attorney failed to raise a Confrontation Clause objection to the introduction of a forensic report. *Soler*, 2015 WL 4879170, at *16. The court in *Soler* denied the petition on the grounds that an attorney in 2007 could not have anticipated the Supreme Court's subsequent decisions, which "represented a distinct change in the state of the law." *Id.* Therefore, both *Vega* and *Soler* highlight the importance of the Supreme Court's post-2007 Confrontation Clause decisions, which expressly eliminated the accusatory witness distinction on which the First Department rested its decision, and which made clear that statements contained within certified reports composed in the course of a criminal investigation are testimonial in nature.

For the same reason that it would be unfair to state courts (and a misapplication of § 2254(d)(1)) to second-guess their judgment in light of law that only became "clearly established" after they delivered a final decision on the merits, *see, e.g.*, *Greene*, 565 U.S. at 38, it would be unfair to Garlick deny him the benefit of the holdings in *Melendez-Diaz* and *Bullcoming*. Taking the view from 2016, as this Court must, the First Department's affirmance was an unreasonable application of clearly established law regarding the testimonial nature of certified out-of-court statements.

## CONCLUSION

I hereby adopt the following conclusions from the R&R: (i) the Autopsy Report was testimonial; (ii) surrogate testimony from a qualified expert in medical examination was not a sufficient substitute for cross examination; (iii) the First Department's ruling on the testimonial nature of the autopsy report was incorrect under Supreme Court precedent; and (iv) the trial court's admission of the autopsy report without providing Garlick the opportunity to confront the medical examiner who prepared it did not constitute harmless error. I do not adopt the portion of

the R&R recommending denial of the petition on the grounds that the First Department's decision was not an unreasonable application of clearly established law.

For the reasons set forth above, Garlick's habeas petition is GRANTED. Accordingly, Respondent is directed to release Garlick from custody unless the People of the State of New York decide to re-try him within the next ninety days. Because I have granted the petition, there is no need to issue a Certificate of Appealability for purposes of appeal. The Clerk of the Court is directed to close this case.

Dated: June 2, 2020

_____
Chief Judge

BY ECF TO ALL PARTIES