UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES GARLICK,

                            Petitioner,

        -v-

SUPERINTENDENT CHRISTOPHER L. MILLER,
Great Meadow Correctional Facility,[1]

                            Respondent.

CIVIL ACTION NO.: 18 Civ. 11038 (CM) (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

On June 2, 2020, the Honorable Colleen McMahon, then Chief Judge of this Court, granted James Garlick's petition (the "Petition") (ECF No. 5) for a writ of habeas corpus. (ECF No. 37 (the "June 2 Order")). See Garlick v. Lee, 464 F. Supp. 3d 611, 614 (S.D.N.Y. 2020) ("Garlick I"). Chief Judge McMahon ordered Respondent, the Superintendent of the prison where Garlick is detained, to "to release Garlick from custody unless the People of the State of New York decide to re-try him within the next ninety days." Id. at 621. On June 24, 2020, Respondent notified the Court that "the Office of the Bronx District Attorney intends to retry [Garlick] on the original indictment if the State's efforts to obtain reversal of the decision awarding habeas relief, after pursuing all available avenues of appeal, are unsuccessful." (ECF No. 41 (the "June 24 Notice") at 1). On August 9, 2021, after the Second Circuit affirmed the June 2 Order, Garlick v. Lee, 1

---

[1] Garlick has been transferred to the Coxsackie Correctional Facility. (ECF No. 46 at n.1). Accordingly, the Clerk of Court is respectfully directed to substitute "Superintendent Daniel F. Martuscello, Coxsackie Correctional Facility" for Respondent Superintendent Christopher L. Miller Great Meadow Correctional Facility, and to amend the caption accordingly. See Fed. R. Civ. P. 25(d).

F.4th 122, 125 (2d Cir. 2021) ("Garlick II"), Respondent advised the Court that it would "now seek review of the issues by the U.S. Supreme Court," and that it "maintains its previously-announced decision to retry [Garlick] if the Supreme Court denies its forthcoming application for a writ of certiorari."  (ECF No. 43 at 1).

Now before the Court is Garlick's motion "for an order mandating [his] release from [S]tate custody on the grounds that the State has violated" the June 2 Order (the "Motion").  (ECF No. 46).  The question for the Court is whether the June 24 Notice complied with the June 2 Order.  Having reviewed the parties' submissions, and having heard oral argument, the Court finds that it does not, and therefore GRANTS the Motion.

## II. BACKGROUND

### A.  Factual Background

The Court assumes familiarity with the underlying facts, a full recitation of which is included in the Court's April 27, 2020 Report and Recommendation on Garlick's Petition.  (ECF No. 29).  Garlick is currently incarcerated at Coxsackie Correctional Facility, (ECF No. 46 at 1), having been convicted of first-degree manslaughter and sentenced to 20 years' imprisonment. (ECF No. 5 at 1; ECF No. 47 at 3).  He has served ten years of that sentence.  (ECF No. 47 at 3).

### B.  Procedural History

On November 27, 2018, Garlick filed the Petition pursuant to 28 U.S.C. § 2254.  (ECF No. 1).  He claimed that the trial court violated the Confrontation Clause of the Sixth Amendment when it permitted the prosecution to introduce an autopsy report without producing for cross examination the witness who prepared it (Id. at 6; ECF No. 5 at 5), and that the Appellate Division, First Department's affirmance of that decision was "contrary to" and constituted an

"unreasonable application" of clearly established Supreme Court precedent.  (ECF No. 4 at 15–16, 32 n.129, 33).  Respondent, who is represented by the Bronx County District Attorney (the "DA"), opposed the Petition on the ground that introduction of the autopsy report at trial and the First Department's rejection of the Confrontation Clause claim were neither contrary to nor an unreasonable application of Supreme Court precedent.  (ECF No. 12 at 9–25).

On April 27, 2021, the Court recommended that the Petition be denied for failing to meet the standard for relief under the Antiterrorism and Effective Death Penalty Act ("AEDPA").  (ECF No. 29 at 11).  "Given, however, that the Petition raise[d] significant questions whether, at the time the First Department affirmed Garlick's conviction, the Supreme Court's Confrontation Clause precedent clearly established that an autopsy report was a 'testimonial' statement, and if so, whether the First Department's decision was contrary to or involved an unreasonable application of clearly established Federal law, the Court also recommend[ed] that a certificate of appealability be granted."  (Id. at 2).

Chief Judge McMahon later issued the June 2 Order granting the Petition.  Garlick I, 464 F. Supp. 3d at 621.  Chief Judge McMahon "adopt[ed] substantially all of [the Court]'s analysis of the issues," but found that Garlick "made the necessary showing to obtain habeas relief."  Id. at 614.  Accordingly, Chief Judge McMahon ordered Respondent to "to release Garlick from custody unless the People of the State of New York decide to re-try him within the next ninety days."  Id. at 621.  On June 3, 2020, the Clerk of Court entered judgment.  (ECF No. 38).

On June 9, 2020, Respondent appealed the June 2 Order to the Second Circuit, but did not seek any stay.  (ECF No. 39).  Twenty-two days after the June 2 Order—Respondent filed the June 24 Notice, stating that "the Office of the Bronx District Attorney intends to retry [Garlick]

on the original indictment <u>if</u> the State's efforts to obtain reversal of the decision awarding habeas relief, after pursuing all available avenues of appeal, are unsuccessful."   (ECF No. 41 at 1 (emphasis added)).

On June 11, 2021, the Second Circuit affirmed the June 2 Order.  <u>Garlick II</u>, 1 F.4th at 136. The Court "conclude[d] that the admission of the autopsy report at Garlick's trial through a surrogate witness was an unreasonable application of clearly established Supreme Court precedent."  <u>Id.</u>   On July 30, 2021, the Second Circuit denied Respondent's request for <u>en banc</u> review.  (Order, <u>Garlick v. Miller</u>, No. 20-1796 (2d Cir. July 30, 2021), ECF No. 82).

On August 9, 2021, Respondent advised the Court that the "State will now seek review of the issues by the U.S. Supreme Court," and that it "maintains its previously-announced decision to retry [Garlick] <u>if</u> the Supreme Court denies its forthcoming application for a writ of certiorari." (ECF No. 43 at 1 (emphasis added)).  The Motion followed.

**C.  <u>The Motion</u>**

On August 11, 2021, Garlick filed the Motion (ECF No. 44), which was re-filed on August 20, 2021 to cure docketing defects.  (ECF Nos. 46, 47).  He seeks "an order releasing him on the ground that the State has violated this Court's conditional-release order by failing to initiate any trial-level proceedings in state court . . . ."  (ECF No. 47 at 3).  Garlick argues that, "[b]y setting a 90-day time frame, this Court demonstrated that its purpose was to secure confirmation that the State would actively move the case towards trial, not that it would merely express an intent to retry Mr. Garlick after <u>years</u> of appellate maneuvers."  (<u>Id.</u> at 6).  He contends that, "if it desired to freeze this case pending appellate review," the DA should have sought a stay of the June 2 Order.  (<u>Id.</u> at 7).  Finally, Garlick notes that his request for relief "is ultimately quite

4

modest" since, upon his release from state custody, "[t]he state court will determine whether Mr. Garlick should be released pending retrial, held on bail, or remanded." (<u>Id.</u> at 7–8 (citing N.Y. Crim. Proc. Law. § 510.10)).

On August 20, 2021, the DA opposed the Motion. (ECF Nos. 48, 49). The DA argues that "[t]he State demonstrated compliance with the [Order] when it filed a letter on June 24, 2020, announcing it had decided to retry [Garlick] . . . after the State exhausted its appellate rights." (ECF No. 49 at 3). It argues that the June 2 Order "did not condition [Garlick's] release from custody on the State's failure to retry him within 90 days[,]"and that, to comply with the June 2 Order, "the State only had to announce its decision as to whether it would retry [Garlick] within the time period prescribed . . . ." (<u>Id.</u>) To support the "reasonableness of the State's interpretation[,]" the DA notes that the June 2 Order "was handed down against the backdrop of the COVID-19 Pandemic" when court operations, including criminal trials, were significantly limited. (<u>Id.</u> at 4–5). The DA also contends that "forcing a retrial before the appellate process is concluded . . . could lead to the absurd result of [Garlick] being retried while the Supreme Court potentially rules that his original conviction was valid." (<u>Id.</u> at 4). Finally, the DA notes that "the State stands prepared to promptly retry" Garlick. (<u>Id.</u> at 5). According to the DA, a prosecutor has been assigned to case, possesses the "case file and all necessary trial exhibits," and is aware of "the necessity of retrying the case in the event the Supreme Court denies the State's certiorari application." (<u>Id.</u>)

On August 27, 2021, Garlick filed his reply. (ECF No. 50). He argues that "[t]he State's reading of the [June 2 Order] improperly converts [it] into a stay pending appellate proceedings — even though no stay was ever sought or granted." (<u>Id.</u> at 2–3).

On September 13, 2021, the Court heard oral argument on the Motion.  (ECF minute entry Sept. 13, 2021; ECF No. 54).

### III. DISCUSSION

#### A. Legal Standards

"Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'"  Hilton v. Braunskill, 481 U.S. 770, 775 (1987).  The "principal form of habeas relief is the 'conditional release order,' which 'only requires release in the event a retrial or other action sufficient to cure the violation does not occur within a period of time specified in the order granting the writ.'"  Rosa v. McCray, No. 03 Civ. 4643 (GEL), 2004 WL 2827638, at *4 (S.D.N.Y. Dec. 8, 2004) (quoting 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 33.1 at 1499 (4th ed. 2001)).

Conditional release orders "represent a district court's holding that a constitutional infirmity justifies petitioner's release[,]" and they "provide[] the state with a window of time within which it might cure the constitutional error."  Phifer v. Warden, U.S. Penitentiary, Terre Haute, Ind., 53 F.3d 859, 865 (7th Cir. 1995).  They "are essentially accommodations accorded to the state."  Id. at 864–65.  "The entire theory of the conditional release order is that 'federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court.'"  Rosa, 2004 WL 2827638, at *4 (quoting Hilton, 481 U.S. at 775).

"The ultimate relief contemplated by the conditional release order is the defendant's release from custody, if the condition is not met."  Rosa, 2004 WL 2827638, at *4; see Wilkinson v. Dotson, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts

6

to give States time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is <u>always</u> <u>release</u>.") (emphasis added); <u>Satterlee v. Wolfenbarger</u>, 453 F.3d 362, 369 (6th Cir. 2006) ("When the state fails to cure the [constitutional] error, <u>i.e.</u>, when it fails to comply with the order's conditions, '[a] conditional grant of a writ of habeas corpus <u>requires</u> the petitioner's release from custody.'") (quoting <u>Fisher v. Rose</u>, 757 F.2d 789, 791 (6th Cir. 1985) (emphasis added by <u>Satterlee</u>).

"A conditional order's framework contemplates that a district court will eventually make an assessment concerning compliance with its mandate." <u>Phifer</u>, 53 F.3d at 865; <u>see</u> <u>Enoh v. Sessions</u>, No. 16 Civ. 85 (LJV), 2017 WL 2080278, at *2 (W.D.N.Y. May 15, 2017) ("as a general matter, this Court retained the power to grant [release] if the government failed to comply with the [conditional release] order.").  "In many cases, whether or not the state has complied will be apparent — where, for instance, a court orders a new hearing and the state completely fails to provide one." <u>Phifer</u>, 53 F.3d at 865.  "In these cases, a specific assessment concerning compliance may be unnecessary — the writ will simply issue because it is apparent that the state has not fulfilled the mandate." <u>Id.</u>  "In other cases, however, the district court will need to examine the content of the state's action to determine whether compliance was sufficient." <u>Id.</u>

   B. <u>**Application**</u>

The Court finds that Respondent has failed to comply with the clear, plain language of the June 2 Order.  Chief Judge McMahon gave Respondent two options: "release Garlick from custody" <u>or</u> "decide to re-try him within the next ninety days." <u>Garlick I</u>, 464 F. Supp. 3d at 621).  Respondent has done neither.  Because well over 90 days have passed since the June 2 Order issued, Respondent has violated Judge McMahon's mandate.

By declaring its intent to retry Garlick only "after pursuing all available avenues of appeal" (ECF No. 41 at 1), Respondent has not "decided" to retry Garlick.  It has instead deferred that decision until after exhausting its appeal of the June 2 Order.  Indeed, the June 24 Notice leaves open the possibility that, if the June 2 Order is reversed on appeal — which seems unlikely, given the Second Circuit's affirmance and denial of rehearing — no retrial will ever take place.  The DA concedes as much by stating that the prosecutor assigned to retry Garlick is aware of "the necessity of retrying the case in the event the Supreme Court denies the State's certiorari application."  (ECF No. 49 at 5) (emphasis added).  While the DA may be "prepared to promptly retry" Garlick (id.), the converse of that assertion is that it is equally prepared not to retry Garlick if it succeeds before the Supreme Court.

Respondent's argument that the June 2 Order did not require the retrial itself to occur within the 90-day timeframe misses the mark.  Even if it were true that, as Respondent argues, "the State only had to announce its decision as to whether it would retry [Garlick] within the time period prescribed" (ECF No. 49 at 3), Respondent still failed to timely announce the decision that Judge McMahon required.

As Respondent conceded at oral argument, his reading of the June 2 Order seeks a situation that the June 2 Order did not establish, i.e., an automatic stay of Garlick's release pending Respondent's appeal of the June Order.  (See ECF No. 54 at 12 ("THE COURT: Yes, but you're not just — it's not just an interpretation.  You're rewriting what Judge McMahon said.  She said 'decide to retry him within the next 90 days.'  She did not say 'decide to retry him within the 90 days if the D.A. is successful on appeal.'  You're adding language that she didn't say.  MR. WEISS: That's correct, your Honor.")).  As discussed above, however, the purpose of conditionally

8

delaying the release of a successful habeas petitioner is intended "to provide the State an opportunity to correct the constitutional violation found by the court[,]'" Hilton, 481 U.S. at 775, not to give the State time to seek appellate review.  The DA provides no authority to suggest that the June 2 Order implicitly imposed a stay pending appellate review, and the Court declines to rewrite the clear instructions in the June 2 Order.  Cf. Jensen v. Pollard, 924 F.3d 451, 455 (7th Cir. 2019) ("The Supreme Court has cautioned that courts 'should not infer . . . conditions from silence' when interpreting conditional writs.") (quoting Jennings v. Stephens, 574 U.S. 271, 277 (2015)); Rice v. White, No. 2:06-CV-11610, 2012 WL 4378214, at *2 (E.D. Mich. Sept.  25, 2012) (finding that respondent "did not need to move for a stay of the Court's conditional grant of habeas relief because the order itself included a stay until all appeals were exhausted").

Respondent's interpretation of the June 2 Order is also contrary to Federal Rule of Appellate Procedure 23(c), which "undoubtedly creates a presumption of release from custody" while an order granting habeas relief is under appellate review.   Hilton, 481 U.S. at 774.  Specifically, Rule 23(c) provides:

> While a decision ordering the release of a prisoner is under review, the prisoner must — unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise — be released on personal recognizance, with or without surety.

Fed. R. App. P. 23(c).  Rule 23(c)'s presumption of release "may be overcome by factors traditionally considered in whether to stay the judgment of a civil case." Waiters v. Lee, 168 F. Supp. 3d 447, 451 (E.D.N.Y. 2016) (citation omitted); see Brown v. Ercole, No. 07 Civ. 11609 (NRB), 2009 WL 1390854, at *2 (S.D.N.Y. May 13, 2009) ("To obtain a stay pending appeal, a respondent must overcome that presumption by establishing that the traditional stay factors 'tip the balance.'") (quoting Hilton, 481 U.S. at 777).  Those factors include: "(1) whether the stay

applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton, 481 U.S. at 776.  Here, however, Respondent never sought a stay, and thus has not even argued — much less proved — that the stay factors weigh in his favor.[2]

Respondent's reliance on this Court's decision in Jordan v. Lamanna, No. 18 Civ. 10868 (SLC), 2020 WL 6647282 (S.D.N.Y. Nov.  12, 2020) is misplaced.  In Jordan, the Court granted the petitioner's request for habeas relief and directed the respondent to "release [the petitioner] from custody unless the DA informs the Court of its decision to re-try her within the next 90 days." Jordan,2020 WL 5743519, at *20.  Three days later, the respondent appealed and, eleven days after that, moved to stay enforcement of the Court's order "until the conclusion of the federal appellate process."  (Notice of Motion, Jordan v. Lamanna, No. 18 Civ. 10868 (S.D.N.Y. 2018), ECF No. 38 at 1).  In its motion to stay, the respondent argued, inter alia, that it would be irreparably harmed absent a stay because it would have to take all the necessary steps to retry the petitioner in parallel with the appeal.  (Id. at 5 ¶ 13).  The respondent also indicated that, "[i]f the order [granting habeas relief] is not stayed, the State does intend to retry [the] petitioner[.]" (Declaration of Vincent Rivellese, Jordan v. Lamanna, No. 18 Civ. 10868 (S.D.N.Y. 2018), ECF No.  44 at 1 ¶ 2).  The Court subsequently granted in part and denied in part the respondent's request for a stay.  Jordan, 2020 WL 6647282, at *8.  In doing so, the Court modified the conditional release order to address the respondent's concerns of irreparable injury, specifically

---

[2] Because neither party seeks relief under Fed. R. App. 23(c), the Court does not consider the stay factors at this time.

by "defer[ring] the DA's obligation to notify the Court of its intent to retry [the petitioner] until after the Second Circuit rules on the DA's appeal." Id. at *5, 8.  The Court noted, in dicta, that the respondent had already "essentially satisfied his notice obligation" under the conditional release order by informing the Court of its intent to retry the petitioner absent a stay or success on appeal. Id. at *5.

      The circumstances of Jordan are different from those present here.  As Garlick correctly points out, the Court's original release order in Jordan "specifically pin[ned] the satisfaction of the conditional writ to . . . [the] announcement of an intent to retry" the petitioner.  (ECF No. 50 at 3).  The June 2 Order did not.  Thus, the Court's comment in Jordan — i.e., that the respondent had essentially satisfied the conditional order by indicating that it would retry the petitioner "[i]f the order [was] not stayed" — has no bearing on whether the June 24 Notice complied with the June 2 Order by announcing its contingent intent to retry Garlick if the appeal fails.  (Declaration of Vincent Rivellese, Jordan v. Lamanna, No. 18 Civ. 10868 (S.D.N.Y. 2018), ECF No. 44 at 1 ¶ 2).  In any event, the Court modified its order in Jordan explicitly to defer the respondent's compliance until after the resolution of its appeal.  Jordan, 2020 WL 6647282, at *5.  Notably, the Court did so in response to the respondent's motion for a stay.  Here, there was no request to modify the June 2 Order, nor did Respondent seek a stay, which, as Garlick aptly argues, "was the State's remedy it if desired to freeze this case pending appellate review."  (ECF No. 47 at 7).

IV.**CONCLUSION**

For the reasons set forth above, Garlick's Motion is GRANTED, and the Court orders as follows:

1. The Superintendent or other official in charge of the Coxsackie Correctional Facility is directed to release Garlick as soon as practicable;

2. Within 24 hours of his release from Coxsackie Correctional Facility, the parties shall file a letter advising the Court whether the Bronx Supreme Court has detained Garlick pursuant to a new arrest warrant or criminal indictment; and

3. If Garlick has not been otherwise ordered detained by the Bronx Supreme Court, the Court will promptly hold a hearing to determine whether to impose conditions on his release.  See Hechavarria v. Whitaker, 358 F. Supp. 3d 227 (W.D.N.Y. 2019) (imposing conditions on the petitioner's release following the respondent's violation of a conditional release order); Waiters, 168 F. Supp. 3d at 454 (explaining that a habeas petitioner "is subject to federal court jurisdiction during the pendency of his petition for a writ of habeas corpus and any appeal from an order granting that writ.").

The Clerk of Court is respectfully directed to close ECF No. 46.

Dated:       New York, New York
             September 21, 2021

                              SO ORDERED.

                              SARAH L. CAVE
                              United States Magistrate Judge